IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 02:12 cr 00035 |
| | ) | |
| CURTIS VEASLEY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANT CURTIS VEASLEY'S MOTION TO SUPPRESS EVIDENCE UNDER *FRANKS V. DELAWARE* WITH CITATION OF AUTHORITY. (Document No. 21) ("Def.'s Mot."). The government has filed a response in opposition (Document No. 22) ("Gov't Resp."), to which Defendant has filed a reply (Document No. 28) ("Def.'s Reply"). On July 24, 2012, the Court conducted a suppression hearing pursuant to *Franks*, and heard oral argument from counsel. The motion is ripe for disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying charges and investigation of Defendant Veasley are outlined as follows.

A. <u>April 2, 2010 Controlled Buy</u>

On April 2, 2010, at 1:30 PM, a drug task force which consisted of officers from the Tarentum Police Department met to formulate a plan to make a controlled purchase of heroin from an identified target individual. At around 3:00 PM, when that particular plan became unaccomplished, the police decided to move on to another target, and conducted a controlled buy of heroin at the residence of Defendant Curtis Veasley ("Veasley"). Prior to the buy, Sergeant

Marsha Cole[1], an undercover officer ("UCO") with the City of Arnold police department, met with Tarentum police officers and a confidential informant ("CI") at the Tarentum Police Department. The CI was searched by police, and was found to not have any drugs or contraband on his person. Subsequently, followed by surveillance, the UCO drove with the CI to pick up an unwitting third party who had agreed to introduce the CI to Veasley. Upon arriving at Veasley's residence, 590 E. 7th Ave. in Tarentum, PA, the UCO was informed that she would not be able to enter the Veasley residence with the CI and the third party. The UCO supplied the CI with $300.00 in official funds in order to make the controlled buy, and the CI and the third party knocked on the door of the residence while the UCO waited in the car. Veasley answered the door, and the CI and the third party entered the home. Shortly thereafter, the CI and the third party exited the residence and got back into the car with the UCO. At this time, the CI counted out 33 stamp bags of heroin and handed them to the UCO. The UCO and the CI dropped off the unwitting third party, and returned to the Tarentum Police Department, where the suspected heroin was tested positive for opiates. The CI was searched again, and no contraband or money was found on his person.

Sergeants Cole and Ryan Hanford each completed a criminal investigative report detailing the controlled buy on April 2, 2010. Sergeant Hanford's report provides more detail with respect to the events leading up to the actual buy. It is noted that the report indicates that officers and the CI originally met at 1:30 PM, and attempted to conduct a controlled buy from another target. The deal with the initially-intended target did not come to fruition, and at approximately 3:00 PM, the CI indicated that he knew the above-referenced unwitting third party who would be able to introduce the CI to Veasley. Sergeant Hanford's report differs from that of

---

[1] Sergeant Cole testified at the hearing on July 24, 2012 that she has been employed with the City of Arnold Police Department for eleven and a half years.

2

Sergeant Cole in that his report indicates that the CI and the third party were inside Veasley's residence for approximately ten minutes, while Sergeant Cole's report indicates that that the CI and the third party were inside the home for only a minute or so.

A state criminal complaint was later filed regarding this transaction. The affidavit of probable cause submitted in support of the state criminal complaint was completed by Sergeant James Newcomer,[2] and sets forth the following series of events:

1) Task force officers and the CI initially met on April 2, 2010 at 1:30 PM to formulate the plan for the controlled buy of heroin from Veasley.

2) The CI and the vehicle to be used in the buy were searched, and no money or contraband was found.

3) A J-Net photo of Veasley was provided to the UCO and the CI, and the CI identified the man in the photo as Veasley.

4) The CI placed a phone call to Veasley and arranged for the CI to purchase $300.00 worth of heroin at Veasley's residence.

5) Upon arriving at Veasley's residence, the CI exited the vehicle and walked onto the front porch of Veasley's residence.

6) Veasley answered the door, and both he and the CI walked into the residence.

7) A few moments later, the CI exited the residence and got back into the vehicle with the UCO.

8) Subsequently, the UCO turned over 33 stamp bags of suspected heroin to Sergeant Newcomer.

9) A field test of the substance was conducted, and the substance tested positive for the presence of heroin.

10) A debriefing was then held, and the UCO and CI both recounted the events of the buy.

---

[2] The affidavit of probable cause filed in support of the application for a search warrant of Veasley's residence on April 16, 2010, indicates that Sergeant Newcomer had been employed as a police officer with the Tarentum Borough Police for fourteen years at that time, and had been involved in several narcotics investigations. At the July 24, 2012 hearing, Sergeant Newcomer testified that he is currently a supervisor, and has been employed by the Tarentum Police Department now for 16 years.

The Court notes several discrepancies between Sergeant Newcomer's report and the facts from the criminal investigative reports completed by Sergeants Cole and Hanford. Specifically, Sergeant Newcomer's report indicates the CI placed the call to Veasley while this detail is not included in either of the criminal investigation reports[3], and makes no mention whatsoever of the unwitting third party who entered Veasley's residence with the CI.

B. April 16, 2010 Traffic Stop of Jamie Belli

On April 16, 2010, Tarentum police received a report of heavy foot and vehicle traffic at Veasley's residence. Sergeant Newcomer and Chief William Vakulick investigated the report and observed a white Hyundai Tiburon with Pennsylvania registration pull in front of Veasley's residence. The passenger, known to the officers as Jamie Belli, exited the vehicle, knocked on the front door, and entered Veasley's residence. Approximately two minutes later, Sergeant Newcomer and Chief Vakulick observed Belli exit the residence and get back into the vehicle. After the vehicle pulled away, the officers conducted a traffic stop of the vehicle. At that time, the officers questioned Belli as to the purpose of his visit to Veasley's residence. Belli told the officers that he went to the residence to collect money from a "buddy." The officers advised Belli that the area was known to be a high drug transaction area, and asked Belli if he had gone there to purchase narcotics. Belli stated that he had not, but consented to a search of his person. Sergeant Newcomer located three stamp bags of suspected heroin in Belli's front right change pocket.

At that time, the officers placed Belli under arrest for possession of narcotics, and transported him to the Tarentum police station. After Belli was read his Miranda warnings, he told the police that Veasley had called him from a particular phone number and advised him to

---

[3] Sergeant Cole testified at the suppression hearing that the CI did not place the call to Veasley. Sergeant Newcomer testified that the CI never, to his knowledge, called Veasley.

4

come to the residence, as he was "good." Belli told the officers that this meant that Veasley had heroin that Belli could purchase.

Belli then described his visit to Veasley's residence, stating that Veasley answered the door and took him inside. In the kitchen area, Veasley removed a plastic bag from a jar containing approximately two to three bricks of heroin. Belli told police he gave Veasley $30.00 in exchange for three stamp bags of heroin. He further stated that as he was leaving the residence, Veasley questioned whether Belli would return, as Veasley stated he had "more."

C. April 16, 2010 Search Warrant Application and Affidavit of Probable Cause

Subsequently, Sergeant Newcomer prepared an affidavit of probable cause in support of an application for a search warrant for Veasley's residence at 590 E. 7th Ave. The application for the search warrant is dated April 16, 2010, and indicates the residence was owned by Joanne Hendrix, but rented to Kayshala Lincoln and Curtis Veasley. Sergeant Newcomer's affidavit of probable cause related the facts set forth above regarding the circumstances surrounding the traffic stop of Jamie Belli and his subsequent admissions to the Tarentum police. The affidavit also included the following information:

> Your affiant has been a sworn Police Officer with the Tarentum Borough Police for 14 years and has been involved in several narcotics investigations. …
>
> This officer is currently conducting a narcotics operation of this residence and Curtis Veasley, <u>an undercover officer has successfully purchased heroin from Curtis Veasley at this residence in the recent past.</u>
> This residence is known to officers to be a drug house, we have received several complaints from the neighbors in the past few weeks about the constant flow in and out of the residence with people arriving and entering the residence and then leaving in just a minute or two after arriving. Several neighbors have been recording license plates of the vehicles coming to the residence and have turned those registrations over to the police.
> Based on our experience as police officers and our experiences in narcotics investigations, all of the above information is indicative of a "heroin house" (a place where people go to purchase heroin).

5

Gov'ts Resp., Ex. 1 (emphasis added). The search warrant was issued, and Tarentum police executed the search at Veasley's residence. The following evidence was discovered throughout the residence: 65 stamp bags of heroin (1.65 grams), 21.29 grams of crack, 6 rounds of 9mm ammunition, 46 rounds of .32 ammunition, a bullet-proof vest, 2 loaded pistols (a 9 mm and a .32 caliber), a loaded .357 revolver, and $7,540.00.

Veasley is charged in a four-count indictment with one count of possession to distribute less than 100 grams of heroin on or about April 16, 2010 (Count I), one count of possession with intent to distribute less than 28 grams of cocaine base on April 16, 2010 (Count II), one count of possession of a firearm by a convicted felon on April 16, 2010 (Count III), and one count of possession with intent to distribute and distribution of less than 100 grams of heroin on or about April 2, 2010 (Count IV).

Veasley's motion to suppress evidence, filed June 12, 2012, seeks to suppress the evidence obtained from his home on April 16, 2010 pursuant to the search warrant. Veasley' contends that the affidavit of probable cause in support of the application for the search warrant contained a false statement, and, therefore, failed to establish probable cause.

### LEGAL ANALYSIS

In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the United States Supreme Court determined that the Constitution allowed a criminal defendant to "challenge the truthfulness of factual statements made in an affidavit supporting the warrant" subsequent to the warrant's issuance. Under *Franks*, a defendant must establish, "by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such

statements or omissions are material, or necessary, to the finding of probable cause." *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171–72).

Under the first prong of the *Franks* analysis, if the defendant proves an affirmative misrepresentation, the court must excise the false statement from the affidavit. *See U.S. v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has previously explained that "[a]n assertion is made with reckless disregard when viewing all evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks and citation omitted).

In this case, Defendant argues that the statement contained in the affidavit of probable cause submitted in support of the search warrant that "an undercover officer has successfully purchased heroin from Curtis Veasley at this residence in the recent past" is false. Def.'s Mot. ¶ 7. As documented in the criminal investigation reports previously discussed, and as confirmed through the testimony of Sergeants Cole and Newcomer at the July 24, 2012 suppression hearing, the purchase was allegedly made by the CI, and not in the presence of the UCO. Moreover, the CI was accompanied by an unwitting third party. The government opposes Defendant's position that the statement is false because the controlled purchase "was initiated and overseen by the undercover officer." Gov't Resp. ¶ 9.

On the one hand, the Court recognizes that the statement, viewed in isolation and without context, could be construed to indicate that an undercover officer had ***personally*** purchased heroin from Veasley at his residence. However, Sergeant Newcomer testified at the suppression hearing that, in his opinion, Sergeant Cole, the UCO, did conduct a successful controlled purchase of heroin from the residence because of her involvement in the operation as an

undercover officer. When viewing the statement in the context of Sergeant Newcomer's testimony, the Court is hard-pressed to make a finding that the statement was false, much less that Sergeant Newcomer made the "false" statement intentionally or with reckless disregard for the truth.

However, in view of the evidence now before it, the Court declines to make a determination as to whether or not the referenced statement in the affidavit was false, and, if so, if the false assertion was made "knowingly and deliberately, or with a reckless disregard for the truth". *See Sherwood*, 113 F.3d at 399 (citing *Franks*, 438 U.S. at 171–72). Ultimately, the determination is inconsequential, as the Court finds that even if the allegedly offending statement is excised, the "corrected" affidavit presents sufficient factual allegations of drug activity at Veasley's residence to support a finding of probable cause to justify authorization of the search warrant.

Turning to the second prong of the *Franks* analysis, the task before this Court is simply to determine whether, once the contested statement is excised from the affidavit, the magistrate judge would have had a substantial basis for finding probable cause. *See Illinois v. Gates*, 462 U.S. 213, 237–38 (1983). At the outset, the Court notes that it may not undertake a *de novo* review of the sufficiency of the affidavit of probable cause. *Id.* at 238. Rather, the standard of review is deferential, and generally limited to the four corners of the affidavit:

> When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited. … [I]t simply ensures that the magistrate had a substantial basis for concluding that probable cause existed. Of course, such deference does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions. But it does mean that the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (citations and quotation marks omitted); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) (stating "[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination"); *United States v. Conley*, 4 F.3d 1200, 1204 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (noting a district court must exercise a deferential review of the magistrate's initial probable cause determination).

Prior to the decision of the United States Supreme Court in *Gates*, the government followed a rigid two-prong test under which it could not rely on a tip from an informant unless the government could show the basis of the informant's knowledge and demonstrate the informant's reliability or veracity. *See U.S. v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000) (citing *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. U.S.*, 393 U.S. 410 (1969)). In *Gates*, the Supreme Court rejected this inflexible test; instead, in considering the sufficiency of an affidavit, the Court established a flexible standard of looking at the "totality of the circumstances," to ensure that the magistrate judge made a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Absolute certainty that evidence of criminal activity will be found at a particular place is not required. *Yusuf*, 461 F.3d at 390. Rather, the issuing court must only conclude that it is reasonable to assume that a search will uncover such evidence. *See U.S. v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005).

Veasley argues that once the statement, "an undercover officer has successfully purchased heroin from Curtis Veasley at this residence in the recent past" is removed from the affidavit, there remain only two additional allegations of criminal activity at Veasley's residence: the information provided to police by Belli, and "vague, nonspecific allegation[s] that neighbors complained about people visiting the residence[.]" Def.'s Mot. ¶¶ 13, 17. It is Veasley's position that these allegations alone are patently insufficient to establish probable cause. Specifically, Veasley contends that the affidavit failed to set forth any information regarding Belli's credibility or veracity, and the fact that Belli provided police with conflicting stories negates any positive conclusion in this regard. Def.'s Mot. ¶ 13. Additionally, Veasley argues that the neighbors' allegations of "people visiting the residence" are "entirely consistent with innocent activity and add[] nothing to the determination of probable cause." Def.'s Mot. ¶ 17. The government maintains that the contested statement was not essential to the magistrate judge's finding of probable cause. Gov't Resp. ¶ 17. The Court agrees with the government, and finds that the totality of the circumstances reflected in the corrected affidavit readily demonstrates probable cause.

First, with regard to the information provided to the officers by Belli, the Court agrees that the affidavit provides the issuing judge with no information regarding Belli's credibility or veracity. Moreover, viewed in isolation, the information provided by Belli would not be sufficient to establish probable cause. However, courts do not view facts alleged in an affidavit in isolation; an informant's credibility is not a separate, dispositive inquiry, but must be evaluated as part of the totality of the circumstances. *See U.S. v. Stearns*, 597 F.3d 540, 555 (3d Cir. 2010). Indeed, "[a] magistrate may issue a warrant relying primarily or in part upon the

statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *Id.*

According to the testimony adduced at the suppression hearing, the circumstances surrounding the police interaction with Belli, as included in the affidavit, are as follows. At the time of the traffic stop which led to Belli's arrest, Sergeant Newcomer and Chief Vakulick were actively investigating a report of heavy foot and vehicle traffic at Veasley's residence. The officers observed a white Hyundai Tiburon pull in front of the residence, and a passenger "known to officers as Jamie Belli" exit from the passenger side of the vehicle and knock on the door of the residence. They then watched as approximately two minutes later, Belli left the residence, got back into the passenger side of the vehicle, and drove away. After conducting the traffic stop, although Belli initially denied purchasing narcotics in what Sergeant Newcomer described to him as a "high drug transaction area," Belli consented to a search of his person and Sergeant Newcomer located three stamp bags of suspected heroin in the pocket of his jeans. Once Belli was placed under arrest and transported to the Tarentum police station, he was read his Miranda warnings and agreed to talk to police about the incident.

Veasley attempts to characterize the information provided by Belli as that of an anonymous tipster. *See* Def.'s Reply ¶ 16 ("Indeed, the need to corroborate anonymous tips with independent police work is so well established, that the failure to do so in a search warrant affidavit defeats the good faith exception under *United States v. Leon*, 486 U.S. 897 (1984)."). However, Belli's identity was obviously known to officers at the time he provided the information regarding Veasley, negating some of the difficulties often associated with anonymous tipsters. *See U.S. v. Dennington*, 2009 WL 2591763 at *7 (W.D. Pa. Aug. 21, 2009). As this Court has previously explained:

11

> [a] face-to-face tip from an identified informant is entitled to greater weight than that from an anonymous informant because officers have a first-hand opportunity to assess the informant's credibility and demeanor, and such persons may be exposing themselves to prosecution for lodging false complaints and/or being in the presence/possession of contraband.

*U.S. v. Luterman*, 2008 WL 4412086 at *2 (W.D. Pa. Sept. 23, 2008). Moreover, the information provided to police by Belli was obtained at the Tarentum police station almost immediately following Belli's own arrest for possession of narcotics. Thus, Belli had every motivation to be helpful to law enforcement, and "[p]roviding false information would [have been] contrary to his own best legal interest." *See Dennington*, 2009 WL 2591763 at *7.

Veasley makes much of the fact that Belli initially told officers he was only at Veasley's residence to collect money owed to him by a "buddy," and then subsequently changed his story at the police station. However, the Court notes that the affidavit did not attempt to conceal this fact from the issuing judge. Rather, the affidavit contains a detailed description of all of the circumstances surrounding Belli's involvement in the present case. Additionally, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234.

Moreover, Sergeant Newcomer and Chief Vakulick observed Belli drive up to, enter, and leave Veasley's residence before executing the traffic stop. The information Belli then provided to police was specific, detailed, and timely. Belli provided police with Veasley's phone number from which Veasley called him to tell him to come to the residence, and specific details regarding his personal observations while in Veasley's residence, including the fact that approximately two to three bricks of heroin were located in a jar in the kitchen, and that Veasley

questioned whether or not Belli would be back. In sum, the alleged lack of credibility of Belli does not in itself justify suppression of the evidence based on lack of probable cause.

Veasley next argues that the only additional allegation in the affidavit "concerns complaints of unidentified neighbors regarding people visiting the residence." Def.'s Reply ¶ 13. Veasley further contends that these complaints are consistent with innocent activity, and were not corroborated by officers, as "during their stake out they report only observing the single visitor." Def.'s Reply ¶ 13.

First, the allegation in the affidavit does not merely indicate that neighbors had complained about "people visiting the residence." Rather, the affidavit states that officers had received several recent complaints regarding the "constant flow in and out of the residence with people arriving and entering the residence and then leaving in just a minute or two after arriving." Gov't Resp. Ex. 1. Moreover, "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Gates*, 462 U.S. at 243 n. 13; *see also U.S. v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) (noting that police surveillance showing such visitors can corroborate information that the residence is being used for narcotics distribution); *U.S. v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992) (noting that a high volume of visitors briefly entering and then leaving a residence is consistent with drug activity). Furthermore, the affidavit states that several of these neighbors were actively recording license plates of the vehicles observed engaging in this activity, and providing the police with this information. Finally, not only did Sergeant Newcomer and Chief Vakulick view a visitor (Belli) engaging in the exact behavior described by the neighbors, Belli was subsequently found to be in

possession of heroin, which he eventually told police he purchased from Veasley during his brief visit to the residence.

Additionally, the Court notes that Defendant's Motion selectively recounts the factual allegations contained in the affidavit in support of the search warrant. The application sets forth that the residence at 590 E. 7th Avenue was rented to Kayshala Lincoln and Curits Veasley. Significantly, Veasley fails to acknowledge, much less challenge, that the affidavit states Sergeant Newcomer was already conducting a narcotics investigation of the residence and of Veasley prior to the issuance of the search warrant.[4] At the time the affidavit was submitted, Sergeant Newcomer had been an officer with the Tarentum police for 14 years, and had been involved in several narcotics investigations.[5] This experience as a police officer, and particularly with narcotics investigations, taken together with the information provided to Sergeant Newcomer by Belli, the reports of heavy foot and vehicle traffic from neighbors, and the existing narcotics operation of the residence and Veasley being conducted by the police leads the Court to conclude that the allegedly false statement was not material to the determination of probable cause.

In sum, even when the contested statement is excised from the affidavit, the Court finds that the issuing magistrate judge had a substantial basis to conclude that there was a fair probability that evidence of a crime would be found at 590 E. 7th Avenue, Tarentum, Pennsylvania on April 16, 2010. Accordingly, the search warrant will be upheld, and Defendant's Motion to Suppress Evidence is DENIED.

---

[4] At the suppression hearing, Sergeant Newcomer responded affirmatively to a direct question from the Court questioning whether he was already conducting a narcotics operation of the residence in question and Curtis Veasley at the time of completing the affidavit for the search warrant. Veasley does not dispute this contention.

[5] Sergeant Newcomer testified at the suppression hearing that he was actually the supervisor of the drug task force as of April 2, 2010.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 02:12 cr 00035 |
| | ) | |
| CURTIS VEASLEY | ) | |

## ORDER OF COURT

AND NOW, this 8th day of August, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion to Suppress Evidence under *Franks v. Delaware* with Citation of Authority filed by Defendant Curtis Veasley is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Markéta Sims,
Assistant Federal Public Defender
Email: marketa_sims@fd.org

Almon S. Burke, Jr.
Assistant United States Attorney
Email: Almon.Burke@usdoj.gov